IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SYED M. SHAH, an individual )
                    Plaintiff, )
    v. )
                     ) No.   12 CV 6845
LITTELFUSE INC., a Delaware Corporation, )
and DIGITAL INTELLIGENCE SYSTEMS ) Judge Virginia M. Kendall
INC., a Virginia Corporation )
                    Defendants. )
                     )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Syed M. Shah filed suit against Defendants Littelfuse, Inc. and Digital Intelligence Systems Corp ("DISYS") pursuant to Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e *et seq*, and 42 U.S.C. § 1981.  Shah, an Asian male of Pakistani origin who is a practicing Muslim, alleges that he was harassed, denied a wage increase, and ultimately terminated by the Defendants based on his race, national origin, and religion.  DISYS moves to dismiss Counts Four, Five, and Six of Shah's Second Amended Complaint (the "Complaint"), arguing that Shah has failed to allege DISYS was his joint employer for Title VII purposes, failed to allege any conduct that would subject DYSIS to liability in the event it is found to be a joint employer, and failed to allege any discriminatory acts by DISYS that subject it to liability under 42 U.S.C. § 1981.  For the reasons stated herein, DISYS's Motion to Dismiss Counts IV through VI is granted.

**STATEMENT OF FACTS**

The following facts are taken from Shah's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Tamayo v. Blagoyevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).  All reasonable inferences are drawn in favor of Shah, the non-moving party. *See*

*Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)).

Shah, an Asian male of Pakistani national origin and a practicing Muslim, began his employment at Littelfuse's Chicago facility on or about February 15, 2010. (Complaint, ¶¶ 8, 17.) William Niedner was an employee of Littelfuse who worked with Shah. (*Id.* ¶ 18.) In April 2010, Niedner began harassing Shah about his race, national origin, and religion. (*Id.* ¶18.) Specifically, Niedner asked Shah how to say "hello" in "Islam" and asked Shah whether he eats camel. (*Id.* ¶ 33–34.) In August 2010 Niedner made statements to Shah indicating that he wished to burn the Qur'an, harassed Shah about fasting during the month of Ramadan, and made other disparaging remarks about Muslims. (*Id.* ¶¶ 19–20.) In September 2010, Niedner asked Shah to look at an item Niedner had pulled up on a computer screen and instead showed Shah an article on the screen stating that all Muslims who wished time off from work for Ramadan should leave their non-Muslim countries and go back to their home countries. (*Id.* ¶ 21.) Shah complained to his supervisor, David Wolfe, on several occasions about Niedner's comments and behavior. (*Id.* ¶ 22.) In September 2010 Wolfe laughed when Niedner stated in the presence of both Shah and Wolfe that all Pakistanis are terrorists and cockroaches. (*Id.* ¶ 23.)

Following the September 2010 incident with Wolfe and Niedner, Shah brought Niedner's behavior to the attention of Don McFeggan, Littelfuse's Director for Global Technologies. (*Id.* ¶ 24.) Shah states on information and belief that in October 2010, McFeggan contacted a Branch Manager at DYSIS, an employment agency, to advise him of Shah's complaints of harassment. (*Id.* ¶¶ 15–25.) Shah also e-mailed Jason Wasikowski, his contacting agent at DISYS, concerning Niedner's harassment. (*Id.* ¶ 26.) Shah also brought Niedner's comments and behavior to the

attention of Mike Yorke, a manager in Littelfuse's Human Resources Department, and Srinivas Reddy, Littelfuse's Director of Global IT Application Operations. (*Id.* ¶¶ 27–28.) Following these conversations, Shah was informed by both Littelfuse and DISYS that the harassment would end. (*Id.* ¶ 29.)

On or about December 1, 2010, Littelfuse made Niedner Shah's direct supervisor. (*Id.* ¶ 30.) Shah alleges that Niedner gave him undesirable projects, pulled Shah off of favorable assignments, denied Shah help with his projects, and criticized Shah in front of other works about alleged errors in his work. (*Id.* ¶¶ 34–35.) In February 2011, Wasikowski informed Shah that he was being denied a raise by Littelfuse. (*Id.* ¶ 31.) On March 8, 2011 Wolfe advised Shah that he should quit working at Littelfuse and find a new job. (*Id.* ¶ 32.) On April 18, 2011, while off work on a personal day, Shah was informed via e-mail that he had been terminated. (*Id.* ¶ 36.) Shah was not given a reason for his termination. (*Id.*)

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670); *accord Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a compliant must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To

3

determine whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 8(a)(2) imposes "two easy-to-clear hurdles" that a complaint must satisfy in order to survive a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6). *Tamayo*, 526 F.3d at 1084 (quoting *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, a complaint must describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendants fair notice" of the claims alleged against them. This requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Concentra*, 496 F.3d at 776.

Second, to survive a motion to dismiss, the court determines whether the well-pleaded allegations, if true, "plausibly suggest a right to relief, raising that possibility above a speculative level." *See Iqbal* 556 U.S. at 679; *Concentra*, 496 F.3d at 776. A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. "The plausibility standard … asks for more than a sheer possibility that a defendant acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). " 'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, *Twombly* and *Iqbal* require "the plaintiff to 'provide some specific facts' to support the legal claims asserted in the complaint." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks v. Ross*, 578 F.3d

574, 581 (7th Cir. 2009)).  Though the "degree of specificity required is not easily quantified, … 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.' " *Id.* (quoting *Swanson*, 614 F.3d at 404).  If a complaint does not satisfy these two criteria, "the plaintiff pleads itself out of court." *Concentra*, 496 F.3d at 776.  Accordingly, a motion to dismiss may be properly granted where the plaintiff does not allege a plausible entitlement to relief either by (1) failing to provide the defendant with notice of plausible claims against it or (2) asserting only speculative or conclusory allegations in the complaint.

## DISCUSSION

### I. Shah's Complaint Fails to State a Claim Against DYSIS Under Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin …." 42 U.S.C. § 2000e-2(a)(1).  To maintain a cause of action for discriminatory discharge under Title VII, a plaintiff must allege the existence of an employment relationship. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991).

#### A. Shah Has Not Alleged that DYSIS was his Joint Employer

Shah's claims against DISYS must be dismissed because they contain no factual allegations that plausibly demonstrate DISYS was his employer.  The Seventh Circuit has recognized joint employer status between a temporary services agency and its client in the labor law context where "two employers exert significant control over the same employees." *N.L.R.B. v. Western Temp. Servs., Inc.*, 821 F.2d 1258, 1266 (7th Cir. 1987) (citation and quotation marks omitted).  The allegations in Shah's Complaint, assumed to be true at this stage of the

5

proceedings, fail to demonstrate that DISYS exercised any, much less "significant" control over his employment. The Complaint is devoid of any facts alleging DISYS controlled Shah's work conditions, assignments, evaluations, or performance. A joint employer relationship does not lie under such circumstances. *See, e.g., Wilcox v. Allstate Corp.*, No. 11 C 814, 2012 WL 6569729, at *11–12 (N.D. Ill. Dec. 17, 2012) (no joint employer relationship where defendant did not supervise plaintiff, direct or control plaintiff's assignments, provide plaintiff feedback, or process plaintiff's requests for time off); *Astrowsky v. First Portland Mortgage Corp.*, 887 F.Supp. 332 (D. Me. 1995) (employment agency not a joint employer based on a lack of control over the plaintiff's work); *Mitchem v. Edmond Transit Mgmt., Inc.*, No. CIV-10-1203-D, 2012 WL 2370669 (W.D. Okla. 2012) (complaint against city as a co-employer dismissed because plaintiff failed to allege that city exercised significant control over plaintiff's employment); *Williams v. Caruso*, 996 F.Supp. 287, 297 (D.Del 1997) (employment agency not an employer because it did not play a role in the manner and means by which plaintiff's work was accomplished); *Kellam v. Snelling Personnel Svcs.*, 866 F.Supp. 812, 815–16 (D.Del. 1994) (same).

Shah's conclusory allegation that "Littelfuse *and DISYS* were [his] joint employer … under Title VII … and 42 U.S.C. § 1981" is insufficient to withstand a Rule 12(b)(6) motion. (Complaint, ¶ 16) (emphasis added). While the plausibility standard announced in *Twombley* and *Iqbal* provides that the court must accept all "well-pleaded facts in the complaint as true," a plaintiff's "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to the presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1951). Thus in determining the sufficiency of Shah's Complaint, the Court will "excise[] the allegations not entitled to the presumption" and then

6

determine "whether the remaining *factual* allegations 'plausibly suggest an entitlement to relief.' " *Id.* (quoting *Iqbal*, 129 S.Ct. at 1951) (emphasis added).

Nearly every factual allegation in Shah's Complaint pertains to Littelfuse. Shah worked at a facility operated by Littelfuse, (Complaint, ¶ 17), the individuals who allegedly harassed Shah worked for Littelfuse, (*Id.* ¶¶ 18–23, 30, 33–34), the communication between Littelfuse and DISYS intended to address the alleged harassment was initiated by Littelfuse, (*Id.* ¶ 24), and Shah was told that he should quit working and find a new job by a Littelfuse supervisor. (*Id.* ¶ 32.)

The few factual allegations implicating DYSIS fail to establish that DYSIS was anything more than an intermediary between Shah and Littelfuse. With respect to DYSIS, Shah alleges the following: (1) Littelfuse contacted DISYS's Branch Manager informing him of the alleged harassment, (*Id.* ¶ 25); (2) Shah e-mailed his contacting agent at DISYS informing him of the harassment, (*Id.* ¶ 26); and (3) Littelfuse and DISYS informed Shah that the harassment would end, (*Id.* ¶ 29). These allegations do not establish substantial control. At best, they suggest DYSIS maintained some administrative involvement in Shah's employment. A plaintiff cannot maintain a valid Title VII claim against a defendant based solely on the defendant's involvement in administrative tasks related to the plaintiff's employment. *See, e.g., Clifford v. Patterson Companies, Inc.*, No. 08 C 828, 2009 WL 3852447, at *9–10 (N.D. Ill. Nov. 18, 2009) (parent company not plaintiff's joint employer because it did not "exercise[] any control over [plaintiff's] daily activities or workload," despite the fact that the parent company issued the plaintiff's paychecks, awarded him company stock, referred to him as an employee in the stock agreement, invited him to participate in a company plan, and advised him of confidentiality obligations).

Shah also alleges that Jason Wasikowski of DISYS informed Shah that he was being denied a raise by Littelfuse. (*Id.* ¶ 31.) However, Shah does not allege that DYSIS played any role in deciding whether his compensation would be increased. To the contrary, the allegations in the Complaint demonstrate that Littelfuse, not DISYS, actually made the determination of whether Shah would receive a raise. (*Id.* ¶ 31 ("In February 2011, Jason Wasikowski of DISYS informed Plaintiff that he was being denied a raise *by Littlefuse*.")) (emphasis added). Shah further asserts, for the first time in his response brief, that he was informed of his termination by DISYS, not Littelfuse. Putting to one side fact that this allegation does not appear in the Complaint,[1] Shah does not allege or even argue that DISYS played any part in the decision to terminate his employment. Rather, Shah simply asserts that Jason Wasikowski of DISYS "was responsible for informing [him] that *Littelfuse was terminating his assignment* ...." (Pl. Resp., p. 4) (emphasis added). Additionally, Shah's allegation that DYSIS issued his paycheck,[2] without more, is insufficient to establish the level of control necessary for an agency to be considered a joint employer. *See, e.g., Clifford*, 2009 WL 3852447, at *9–10; *Watson v. Adecco, Inc.*, 252 F.Supp.2d 1347, 1349 (M.D. Fla. 2003) ("The mere fact that [the defendant employment agency] issued Plaintiffs their paychecks is not alone sufficient for title VII employer status.") (citation omitted).

Shah relies primarily upon *Piano v. Ameritech/SBC*, 02 C 3237, 2003 WL 260337 (N.D. Ill. Feb. 5, 2003), to support his position that DYSIS was his joint employer for Title VII purposes.

---

[1] Shah's is apparently not shy about using his response brief to recharacterize and amend his Complaint (for a fourth time). Throughout his response to DYSIS's Motion to Dismiss, Shah asserts facts that do not appear in his Complaint and directs the Court to portions of his Complaint that do not support the assertions for which they are cited. For example, Shah argues in his response brief that he has alleged in paragraph 17 that DISYS placed him with Littelfuse. Paragraph 17 of the Complaint contains no such allegation. Shah also alleges that DISYS contacted Littelfuse concerning the alleged harassment and requested that Littelfuse's Human Resources Department contact Plaintiff regarding his complaints. The portion of the Complaint Shah cites to support his assertion, paragraph 25, says nothing of Littelfuse's Human Resources Department nor does it allege any communication initiated by DISYS or suggest that DISYS employees provided direction to Littelfuse employees on how to address Shah's grievances.

[2] This allegation also does not appear in the Complaint and is asserted for the first time in Shah's response brief.

In *Piano*, the plaintiff was an employee of Pro-Staff, a temporary employment agency, and was assigned to work as a Billing Support Specialist for Ameritech, the defendant. *Id.* at *2–3. Just over a year after beginning his employment, Ameritech filled the plaintiff's position by hiring another temporary services employee and notified Pro-Staff that it no longer had tasks for the plaintiff to perform. *Id.* at *4. The plaintiff filed suit against Ameritech pursuant to Title VII and the ADEA, and Ameritech moved for summary judgment on the basis that it was not the plaintiff's employer. *Id*. Notwithstanding the fact that the plaintiff was technically an employee of the Pro-Staff, the court held that Ameritech could be held liable pursuant to Title VII and the ADEA under a joint-employer theory because Ameritech had the sole responsibility for directing what work the plaintiff performed, supervising her in how she performed it, and changing the plaintiff's specific job assignments. *Id.* at *5. The court reasoned that "the joint employer theory should apply in cases in which an individual is employed by a temporary employment agency, but suffers discrimination by the employer to which she is assigned, where that employer exerts a significant amount of control over the individual." *Id*.

The circumstances in *Piano* bear virtually no resemblance to this case. In *Piano*, Pro-Staff, the temporary services agency that assigned the plaintiff to work for Ameritech, was not a defendant. Therefore the court did not address whether and under what circumstances a plaintiff could maintain a lawsuit against a temporary employment agency. Rather, the issue before the court in *Piano* was whether a plaintiff, despite being technically employed by an employment agency, could use the joint employer theory to hold the employment agency's *client* liable based on the client's significant control over the employee's day-to-day work activities. The *Piano* court determined that a plaintiff should be able to sue the employment agency's client

9

under such circumstnaces because "[f]ailing to apply the joint employer theory in this context would permit an employer that would otherwise be subject to Title VII's constraints to avoid liability for discrimination while maintaining total control over the work of its employees, merely by hiring them through agencies in a temporary capacity." *Id.* at *6.

In this case, the parties do not dispute that Shah was an employee of DISYS's client. Unlike *Piano*, the plaintiff here seeks to bring a claim against an employment agency, not the agency's client. Thus the question in this case is not whether an employer may be found liable under Title VII for its conduct toward employees hired through an agency, but whether a plaintiff can maintain a Title VII claim against an agency under the joint-employer theory where the agency serves as an intermediary between the plaintiff and the agency's client but exercises virtually no control or supervision over the plaintiff's day-to-day work. For the reasons discussed above, the Court finds that a temporary employment agency cannot be sued pursuant a joint-employer theory under these circumstances.

### B. Even if DYSIS was a Joint Employer, Shah has Failed to State a Basis for Liability Against DYSIS

Even if Shah were to have plausibly alleged the existence of a joint employer relationship, Counts IV through VI must be dismissed because Shah's Complaint fails to state a basis for liability against DISYS. A joint employer relationship does not automatically expose an employer to liability for actions taken by its co-employer. *See, e.g., Brown v. Cook County*, No. 10 C 2689, 2012 WL 6055318, at *3 (N.D. Ill. Dec. 6, 2012) (stating in an FMLA case that "[n]owehre in the statute or regulations … is it suggested that one employer can or should be held liable for the other employer's adverse employment actions solely because of their joint employer relationship …. even if there is a joint employer relationship, each of the defendant employers

must have its own relevant contacts with the plaintiff employee for the purposes of FMLA liability"); *Neal v. Manpower Intern., Inc.*, 3:00-CV-277/LAC, 2001 WL 1923127, at *9 (N.D. Fla. Sept. 17, 2001) (defendant employment agency would not be liable even if the court were to assume for the sake of argument that it was the plaintiff's joint-employer because the employment agency did not have control over the other employer's supervisors who engaged in the harassing conduct and thus had no "opportunity to guard against their misconduct, nor to screen them, train them, and monitor their performance") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). Courts addressing the liability of temporary employment agencies have held that a staffing or employment agency found to be a joint employer may be held liable under Title VII if the agency knew or should have known of the discriminatory conduct and failed to take prompt corrective measures within its control. *See, e.g., Lima v. Adecco*, 634 F.Supp.2d 394, 400-01 (S.D.N.Y. 2009), *aff'd* 375 Fed.Appx. 54 (2d Cir. 2010) ("We also agree with the District Court that even if [the defendants] could be considered a "joint employer," [the temporary employment agency] could not be held liable to plaintiff based on that legal theory because there is no evidence that [the agency] either knew or should have known about any of the alleged discrimination.") (citation omitted); *Watson v. Adecco,* 252 F.Supp. 2d 1347, 1356-57 (M.D. Fla. 2003) (defendant employment agency not a joint employer where "the corrective measures available to [the employment agency] are limited, for the defendant, a private company, cannot force its client, another private company, not to discriminate or run its business in a certain manner"); *see also Medina v. Adecco*, 561 F.Supp. 2d 162, 178 (D.P.R. 2008).

In this case, Shah's Complaint makes the conclusory allegation that DISYS "acted negligently by failing to take appropriate steps to ameliorate the situation," (Complaint, ¶¶ 75, 87,

99), without alleging any facts demonstrating how DISYS acted negligently or what they could have done to address the harassment. Shah does not claim that DISYS exercised any authority or control over Shah's co-workers, supervisors, or any other Littelfuse employees, much less the individuals that allegedly harassed him. Shah's boilerplate allegation that DYSIS "acted negligently," without more, is insufficient to sustain a claim for employment discrimination against DISYS. *See, e.g., Goodman v. Port Authority*, 850 F.Supp.2d. 363, 387 (S.D.N.Y. 2012) ("Such bare-boned assertion regarding [joint employer's] knowledge of the alleged discriminatory conduct and failure to act does not meet the standard set forth in *Iqbal* and *Twombly*."). Shah also argues that "[b]ecause DYSIS did not act to protect Plaintiff from being subjected to discrimination, … DISYS is responsible as a joint employer for Plaintiff's damages." (Pl. Resp., p. 4.) As DYSIS correctly points out, this statement is a *non sequitur*. An employment agency's failure to protect from discrimination does not lead to joint employer status. Rather, the plaintiff must allege facts that, if true, establish (1) a joint employer relationship, (2) that the joint employer knew or should have known of the discriminatory conduct, *and* (3) that the joint employer failed to take prompt corrective measures within its control. *See Lima*, 634 F.Supp.2d at 400–01; *Medina*, 561 F.Supp.2d at 178; *Watson*, 252 F.Supp.2d at 1356–57. Because Shah has failed to meet the first and third requirement, his Title VII claims against DYSIS must be dismissed.

      **C.**      **The Complaint Does Not State a Basis for Liability Based on DYSIS's Status as an Employment Agency**

Having found that Shah has failed to make any plausible allegations of fact suggesting that DISYS was his joint employer, the Court turns to whether the allegations in Shah's Complaint, if true, plausibly state a claim against DISYS for employment discrimination based on DYSIS's status as an "employment agency." It is unlawful for an employment agency to "fail or refuse to

refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the bases of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(b). Title VII defines "employment agency" as: any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." 42 U.S.C. § 2000e(c).

The few courts that have addressed the liability of employment agencies under Title VII have held that "the scope of prohibited practices is limited" in comparison to discrimination cases involving actual employers. *See, e.g., E.E.O.C. v. Kelly Servs., Inc.*, 598 F.3d 1022, 1030 (8th Cir. 2010) (In order to establish a *prima facie* case of religious discrimination against an employment agency, Muslim temporary worker assigned by the employment agency had to show that the agency discriminated against her based on her religion in relation to referrals); *Koger v. Allegheny Intermediate Unit*, Civ.A 10-1466, 2012 WL 603565, at *12 (W.D. Pa. Feb. 24, 2012) (employment agencies can be held liable "only for discrimination in referrals, failure to refer, or other discriminatory practices relating to referrals"); *Caruso*, 996 F.Supp. at 297 ("It is clear … that the practices prohibited to 'employment agencies' do not encompass the practices prohibited to 'employers.'") (quoting *Kellam*, 866 F.Supp. at 817); *cf.*, *Wilborn v. Southern Union* State, 720 F.Supp. 2d. 1274, 1293 (M.D. Ala. 2010) ("[I]f an employment agency cannot refuse to refer on the basis of sex, it certainly cannot demand sexual favors as a prerequisite for referral."). Assuming all factual allegations in Shah's Complaint are true, the Complaint fails to state a claim against DYSIS based on its status as an employment agency because there are no allegations that

13

DISYS discriminated against Shah based on his race, national origin, or religion in relation to referrals.

As Shah has failed to allege a basis for liability against DYSIS under Title VII, Counts V and VI of Shah's Complaint must be dismissed.

**II.     Shah Fails to State a Claim for Discrimination Under 42 U.S.C. § 1981**

42 U.S.C. §1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence … as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  Although Section 1981 does not use the term "race," the Supreme Court has construed Section 1981 to "forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160 (1976)); *see also Patterson v. McLean Credit Union*, 491 U.S. 164 (1989).  Section 1981 is violated only by intentional discrimination. *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).  Thus in order to state a claim for discrimination under § 1981, a plaintiff must allege that "(1) he is a member of a racial minority; (2) the defendant had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Pourghoraishi v. Flying J., Inc.*, 449 F.3d. 751, 756 (7th Cir. 2006) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)).

Shah has failed to allege facts against DISYS that could entitle him to relief under 42 U.S.C. § 1981 because his Complaint pleads only the first of these three elements.  As discussed above, Shah has not alleged any direct acts of discrimination by DISYS.  Shah does not allege that DISYS or its employees made racially insensitive remarks or treated Shah differently based on his

race.  Nor has Shah alleged any direct contractual employment relationship with DISYS.  Shah's allegation that DISYS employees were aware of the harassment and failed to take steps to ameliorate it is insufficient under Section 1981. *See, e.g., Miller v. Chicago Housing Authority*, 11 C 8625, 2012 WL 2116190, at *4 (N.D. Ill. June 8, 2012) (plaintiff failed to state a claim under Section 1981 where complaint merely alleged that Defendants were aware that plaintiff was being discriminated against and did nothing to remedy the situation but did not allege that Defendants intended to discriminate against the plaintiff based on his race or that he was in a contractual relationship with the Defendants).  Accordingly, Count IV of Shah's Complaint must be dismissed.

## CONCLUSION AND ORDER

For the reasons stated above, the Court grants DYSIS's Motion to Dismiss Counts IV, V, and VI of Shah's Second Amended Complaint.  This being Shah's third attempt to state Title VII and Section 1981 claims against DYSIS, the Court has no reason to believe an amendment would not be futile.  Therefore, Counts IV, V, and VI of Shah's Second Amended Complaint are dismissed with prejudice.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:   April 29, 2013